UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

CHARLES CULP #176085,

        Plaintiff,                     Case No. 2:08-cv-34

v.                                           Honorable Robert Holmes Bell

CORRECTIONAL MEDICAL
SERVICES, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, I recommend that Plaintiff's complaint be dismissed for failure to state a claim.

**Discussion**

  I.  Factual allegations

Plaintiff Charles Culp, an inmate at the Alger Maximum Correctional Facility (LMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Correctional Medical Services, Inc. (CMS), Chief Medical Officer George Pramstaller, Dr. Michael Engelsgjerd, Dr. Fernando Frontera, Physician's Assistant Joseph Burtch, Physician's Assistant S. Heebsh, Dr. Craig Huthinson, and Grievance Reviewer Jim Armstrong.

Plaintiff alleges in his complaint that in May of 2003, while he was incarcerated at the Standish Correctional Facility under the care of Defendants Burtch and Heebsh, he began to have problems in his ankle and lower extremeties. Plaintiff's legs became swollen and purple in color, and open and bleeding sores appeared. Plaintiff asked to see a podiatrist and was told that his request would have to be approved by Defendant Pramstaller. On August 21, 2004, ulcers on Plaintiff's legs became infected and he was placed on antibiotics and given ace bandages. Plaintiff states that some of the sores on his legs were so bad that he could see the "bone area." Defendants Pramstaller and Hutchinson denied Plaintiff's request to see a podiatrist. Plaintiff claims that his condition continued to worsen, but he was denied pain medication by Defendants Heebsh and Burtch. A medical plan was set up to have Plaintiff's legs cleaned and wrapped by nurses, but Plaintiff claims that this was not done on numerous occasions. Plaintiff filed grievances in an effort to get outside treatment and was eventually taken to a hospital because the condition was becoming untreatable by prison staff.

At the hospital, Plaintiff was told that he required surgery to keep his legs from being amputated and that he needed to see a podiatrist. After Plaintiff was returned to prison, Defendant Burtch again requested that Plaintiff see a podiatrist, but Defendant Pramstaller denied the request.

Plaintiff began writing letters to CMS officials, Defendant Pramstaller and Defendant Hutchinson in an effort to obtain treatment, but they never responded. In addition, Plaintiff's grievances were denied.

Plaintiff claims that in retaliation for filing grievances, he was transferred to the Marquette Branch Prison (MBP), where he was evaluated by Defendant Engelsgjerd. Plaintiff states that his treatment started all over again and that he was in serious pain due to continued infection. Plaintiff asserts that the antibiotics no longer helped and his feet became quite swollen, so that Plaintiff had to wear shower shoes out into the cold to go to meals because he could not fit into his regular shoes. Plaintiff was again sent to the hospital, where it was recommended that Plaintiff see a podiatrist, but prison officials would not comply with this recommendation.

At some point, Plaintiff was seen by a doctor per video communication, where he had to put his ankles up to the screen to allow a doctor to look at them. Plaintiff was subsequently transferred to LMF, which is the only facility within 600 miles that has a licensed physician. Plaintiff was evaluated by Defendant Frontera, who repeated the same course of treatment that Plaintiff had already received at other facilities. On September 28, 2007, Plaintiff had lab work done. Plaintiff received a copy of the results which stated that there was no abnormality, but Plaintiff was later accidentally sent the Records Office copy, which showed that an abnormality did exist and intervention was required.

Plaintiff was again sent to the hospital for his legs, and was again told that he needed to see a podiatrist and that the antibiotics he was taking were no longer working. When Plaintiff returned from the hospital, Defendant Frontera told him that Defendant Pramstaller had denied his request to see a podiatrist. Plaintiff again filed numerous grievances in order to obtain bandages and shoes that fit. Plaintiff states that he has special medical details for these items. Plaintiff contends

that 333.1801 of the Michigan Health Code provides that only a licensed podiatrist is authorized to treat Plaintiff's vascular disease. Plaintiff seeks damages and injunctive relief.

  II.   Failure to state a claim

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Initially, the undersigned notes that Plaintiff is claiming that Defendants' conduct violated his rights under the Eighth Amendment. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the

- 4 -

inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer*, 62 F.3d at 154-55; *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

In this case, Plaintiff's complaint, as well as the attachments, indicate that he received medical attention on numerous occasions. According to the step III response to grievance number MBP 06112085 dated March 17, 2007, shoes were ordered for Plaintiff, but he complained that they were too narrow, so that they had to be reordered. In addition, Plaintiff was refusing lab draws and indicated that he was no longer going to take his medication. The step III response to grievance number MBP 06101815 dated December 11, 2006, indicated that Plaintiff had been evaluated by the Medical Service Provider and had received a bottom floor accommodation. The step III response to grievance number LMF 07041642 dated June 19, 2007, states that Plaintiff is being evaluated, monitored and treated for his condition by the Medical Service Provider, as well as by the Regional Medical Officer, and that his request for surgery may be reconsidered when the Medical Service Provider determined that other courses of treatment have not been effective. In addition, medical records attached to Plaintiff's complaint show that he received lab tests at least eight times in 2007, as well as on four other occasions from 2004 through 2006.

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the

treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976); *see also*, *Brock v. Crall*, No. 00-5914, 2001 WL 468169, at *2 (6th Cir. Apr. 27, 2001); *Jones v. Martin*, No. 00-1522, 2001 WL 223859, at *1 (6th Cir. Feb. 28, 2001); *Williams v. Mattson*, No. 99-1796, 2000 WL 924145, at *1 (6th Cir. June 28, 2000); *Davis v. Ulep*, No. 97-2124, 1999 WL 98390, at *1 (6th Cir. Jan. 29, 1999); *Cain v. Huff*, No. 96-1613, 1997 WL 377029, at *4 (6th Cir. July 2, 1997); *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997). As noted above, Plaintiff was consistently evaluated and provided with treatment for his condition. The fact that he did not get a referral to a podiatrist is not sufficient to rise to the level of an Eighth Amendment violation.

Plaintiff also claims that he was transferred to MBP in retaliation for his use of the grievance procedure. The filing of grievances is constitutionally-protected conduct for which a prisoner cannot be retaliated against. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, in least in part, by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (N.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "Merely alleging the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. Conclusory allegations of retaliatory motive "with no concrete and relevant particulars" fail to raise a genuine issue of fact for trial. *Salstrom v. Sumner*, No. 91-15689, 1992 WL 72881, at *1 (9th Cir. April 10,

1992); *see also Birdo v. Lewis*, No. 95-5693, 1996 WL 132148, at *1 (6th Cir. March 21, 1996); *Fields v. Powell*, No. 94-1674, 1995 WL 35628, at *2 (6th Cir. Jan. 30, 1995); *Williams v. Bates*, No. 93-2045, 1994 WL 677670, at *3 (6th Cir. Dec. 2, 1994). Plaintiff merely alleges the ultimate fact of retaliation in this action. He has alleged no facts to support his conclusion that he was transferred to MBP because of his use of the grievance procedure. Accordingly, his speculative allegation fails to state a claim.

### Recommended Disposition

Having conducted the review now required by the Prison Litigation Reform Act, I recommend that Plaintiff's complaint be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Should this report and recommendation be adopted, the dismissal of this action will count as a strike for purposes of 28 U.S.C. § 1915(g).

I further recommend that the Court find no good-faith basis for appeal within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: April 15, 2008

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).